ACCEPTED
01-15-00013-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/6/2015 8:44:43 AM
CHRISTOPHER PRINE
CLERK

## NO. 01-15-00013-CR

## IN THE COURT OF APPEALS

## OF THE FIRST SUPREME JUDICIAL DISTRICT

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/6/2015 8:44:43 AM
CHRISTOPHER A. PRINE
Clerk

### MARLON ONEIKE GREEN,
Appellant

### V.

### THE STATE OF TEXAS
Appellee

Appeal in Cause No. 1376204

In The 230th Court Of

Harris County, Texas

## BRIEF OF APPELLANT

Hattie Sewell Shannon
Attorney For Appellant
6750 West Loop South, Suite 825
Bellaire, Texas 77401
(832) 767-1498
TBN 13155700
FAX (832) 767-1506

ORAL ARGUMENT WAIVED

## IDENTIFICATION OF THE PARTIES

Pursuant to Tex. R. App. P. 38.1(a), a complete list of all parties to the trial court's judgment or order appealed from, and the names and addresses of all trial and appellate counsel.

Appellant or criminal defendant:

Marion Oneike Green

Trial Counsel:

Susan Bishop
P. O. Box 52097
Houston, Texas 77052

Appellate Counsel:

Hattie Sewell Shannon
6750 West Loop South, Suite 825
Bellaire, Texas 77401

Counsel for the State:

Sarah Roberts
1201 Franklin
Houston, Texas 77002

Trial Judge:

The Honorable Brad Hart

# TABLE OF CONTENTS

PAGE

IDENTIFICATION OF PARTIES i

TABLE OF CONTENTS ii

INDEX OF AUTHORITIES iii

STATEMENT OF THE CASE 1

STATEMENT OF FACTS 1

SUMMARY OF THE ARGUMENT 2

ISSUE PRESENTED 2

> Court appointed counsel believes that the appeal in this case is frivolous, since there are no arguable grounds for appeal of the trial court's sentencing Appellant to 30 years imprisonment which was within the range of punishment for aggravated robbery

ARGUMENT 2

PRAYER 12

CERTIFICATE OF SERVICE 13

CERTIFICATE OF COMPLIANCE 14

# INDEX OF AUTHORITIES

**Cases**                                                                    **Page**

*Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396,                            2
    18 L.Ed. 2d 493 (1967)

*Currie v. State,* 516 ..ex.Crim.App. 1997)                                      3

Ex Parte Wilson, 956 S,W. 2d 25 (Tex. Crim. App. 1997)                          13

*High v. State,* 573 S.W.2d 807 (Tex.Cr.App.1978)                                3

*McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429 (1988)                    3

*Sowels v. State,* 45 S.W.3d 690 (Tex.App.-Waco 2001, no pet)                    3

*Stafford v. State,* 813 S.W.2d 503 (Tex.Cr.App.1991)                            3

*Stephens v. State,* 35 S.W.3d 770
    (Tex.App.-Houston [1st Dist.] 2000, no pet.)...........    2

## Statement Of The Case

The Appellant, Marlon Oneike Green, was indicted for the felony offense of aggravated robbery. (CR. I – 9). He was placed on deferred adjudication for ten years on October 24, 2013. (CR. I-111). A motion to adjudicate guilt was filed on July 7, 2014. (CR. I-132). A hearing was held on the motion to adjudicate on October 1, 2014, wherein the Court assessed appellant's punishment at 30 years in the Texas Department of Criminal Justice Institutional Division. (RR. I – 52).

## Statement of Facts

A lengthy statement of facts is unnecessary for this Anders brief, which asserts that there are no arguable grounds to be raised in this appeal. Following a hearing on a motion to adjudicate, Appellant was sentenced to thirty (30) years imprisonment on October 1, 2014. Court found the two allegations to be true which were presented to him at the hearing.

## Summary Of The Argument

There is no arguable ground to be raised in this appeal of the Court adjudicating Appellant's guilt at the hearing. The Appellant had been placed on deferred adjudication for ten years for aggravated robbery on October 24, 2013. As a condition of Appellant's deferred adjudication, he was committed the Young Men About Change Program (YMAC). Appellant was to remain in the facility under custodial supervision and comply with all program rules, regulations,

1

contracts and guidelines of the facility until successfully discharged or released by further order of the Court.

During the hearing, employees of YMAC testified that Appellant violated the rules of YMAC and was thereby discharged. After listening to the testimony of the witnesses concerning the violation of the YMAC rules, Appellant was sentenced to thirty years imprisonment.

The undersigned thereby requests that this Court follow the procedures prescribed in *Anders v. California*, 386 U. S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) and *Stephens v. State*, 35 S. W. 3d 770 (Tex. App.-Houston [1st Dist] 2000, no. pet.), as discussed infra.

## Issue Presented

Court-appointed counsel believes that the appeal in this case is
frivolous, since there are no arguable grounds for appeal of the trial
court's sentencing Appellant to 30 years imprisonment which was
within the range of punishment for aggravated robbery.

## Argument

### A. *Anders* briefs generally

The procedure to be followed with what have come to be known as *Anders* briefs is well-established. If appointed counsel on appeal makes a professional, conscientious examination and evaluation of the record and determines that an appeal is wholly frivolous, counsel should so advise the appellate court and request permission to withdraw as counsel on appeal. *Anders v. California, supra.* A

2

wholly frivolous appeal is one that "lacks any basis in law or in fact." *See McCoy v. Court of Appeals of Wisconsin,* 486 U.S. 429, 438 n.10 (1988). A reviewing court must resolve doubtful issues in the appellant's favor. *See McCoy v. Court of Appeals of Wisconsin, supra.*

Counsel must file a brief in support of the motion to withdraw. In the brief, counsel must make references to the appellate record as well as to any applicable statutes, rules, and cases that lead counsel to the conclusion that the appeal is frivolous. *Sowels v. State,* 45 S.W.3d 690, 691 (Tex.App.-Waco 2001, no pet). The brief must contain references to anything in the record that might arguably support the appeal, even though counsel believes that the appeal is frivolous. *Anders v. California, supra; Stafford v. State,* 813 S.W.2d 503 (Tex.Cr.App.1991).

Counsel is not required to make arguments that would not be made on behalf of a client who has retained counsel for the appeal; counsel is not required to make arguments for which there is no merit. *Currie v. State,* 516 S.W.2d 684 (Tex.Cr.App.1974). If counsel concludes that there are no arguable grounds for appeal, then counsel should so state and should make references to the record, statutes, and cases which support that conclusion. *Stafford v. State, supra; High v. State,* 573 S.W.2d 807 (Tex.Cr.App.1978).

When discussing the record, counsel must discuss the evidence introduced at trial and must provide the appellate court "with ready references to the record."

3

*Stafford v. State, supra at 510 n.3*; *High v. State, supra.* Conclusory statements in the brief are insufficient. *Anders v. California, supra*; *Currie v. State, supra.*

Counsel must furnish a copy of the motion to withdraw and a copy of the brief to appellant and must advise appellant of his right to review the record and to file a *pro se* brief. Counsel must certify or otherwise show the appellate court that appellant has been furnished with a copy of the motion and brief and that appellant has been advised of his right to obtain the record and to file a pro se brief.

After appellant has himself raised the points that he wishes to raise, or the time has passed for him to do so, the appellate court must conduct an independent examination of the proceedings and determine whether the appeal is wholly frivolous. *Anders v. California, supra.* If the court finds that the appeal is wholly frivolous and that there are no arguable grounds for appeal, it will grant the motion to withdraw and affirm the judgment of the trial court. *Anders v. California, supra.* If the court determines that there are arguable grounds, it will abate the appeal and remand the cause to the trial court with instructions that the trial court appoint new and different counsel to represent appellant on appeal to present those arguable grounds, as well as any others that new counsel might wish to present. *Stafford v. State, supra.* The appellate court does not make a decision on the merits of any issue, except to determine whether an appeal is wholly frivolous and that there

either are or are not arguable grounds for appeal. *Anders v. California, supra; Stafford v. State, supra.*

**B. There are no arguable grounds for appeal in this case**

During the hearing on the motion to adjudicate, the Court stated in part:

"Now, I know that there's only two allegations here that the State has proved in my mind which I will find true to those two allegations regarding the June 9th and the May 29th allegations... I will find those two allegations to be true. I will find you guilty of aggravated robbery. And I will assess your punishment at 30 years in the Texas Department Of Criminal Justice Institutional Division." (CR. I – 51, 52).

Two employees from the YMAC program testified during the hearing regarding the alleged violations. The court liaison officer, Donna Hood, also testified concerning which allegation would be addressed at the hearing. She testified on direct examination in part as follows:

"PROSECUTOR: Okay. And in this case, looking at the conditions of probation, what - - if you can please tell me what condition No. 38 is?

DONNA HOOD: You're committed to HCCSD, Young Men About Change Program beginning on or when space is available. Remain in this facility under custodial supervision. Comply with all program rules, regulations, contracts and guidelines of the facility until unsuccessfully

5

discharged or released by order of the court. You'll also complete the aftercare program that's outlined in your discharge summary until successfully completed or discharged by order of the court". (CR. I - 7,8).

The next witness at the hearing was Ronald Finch, a corrections officer at YMAC. He testified in part during redirect examination as follows:

"PROSECUTOR: You've stated that you were the person that wrote up Marlon Green for this June 9[th], 2014 major rule offense; is that correct?

RONALD FINCH: Yes, ma'am.

PROSECUTOR: Okay. And so, looking at and reading it again, is this based on a wake-up call in the morning or is this during some other time of day?

RONALD FINCH: That's during regular time of day.

PROSECUTOR: Okay. And so, at some point he was back in his rack and refusing to get up and sleeping. But it doesn't necessarily mean the morning wake-up call?

RONALD FINCH: Yeah. It's not morning wake-up call because I'm not there.

PROSECUTOR: Okay." (CR I – 20-21).

The last witness was Dante Carbajal, a direct care monitor at YMAC. His testimony was in part as follows:

"PROSECUTOR: Okay. And did you ever have to write up Marlon Green for any disciplinary or violation actions?

DANTE CARBAJAL: Yes, ma'am.

PROSECUTOR: Okay. Were you working on May 29, 2014?

DANTE CARBAJAL: Yes.

PROSECUTOR: Okay. And are you aware of Major rule No. 35, refusing to obey a directive by any staff member?

DANTE CARBAJAL: Yes ma'am.

PROSECUTOR: Okay. And did you write up Marlon Green for this violation?

DANTE CARBAJAL: Yes, ma'am.

PROSECUTOR: Okay. Specifically, can you explain to the Court what the violation was on May 29, 2014?

DANTE CARBAJAL: Yes. Mr. Green took chairs into the shower areas. And the clients are not allowed to have chairs in the shower because of safety regulations. They could, you know, fall, et cetrera. And he refused to take them out. So, I wrote him up. I gave him a - - well, I gave him a pull up. It's kind of like a warning. But when he refused, then I - - I filed the paperwork." (CR. I-33-34).

7

During cross examination of Mr. Finch, defense counsel did attempt to show that appellant was unable to follow the rules due to his mental illness. She questioned Mr. Finch in part as follows:

"MS. BISHOP: Okay. Let's talk about the issue with Mr. Green responding to wake-up calls. And they are - - it was a wake-up call. Am I correct?

RONALD FINCH: Negative, ma'am. It would have been on for medication. Like on Saturdays, they sleep and we wake them up to take their medication and then get ready to go to chow. Also during the daytime, which I'm there from - - I'm off Sunday and Mondays. I'm there Tuesday through Saturday. Sometimes they go in their racks and they go to sleep. So, we wake you up. Hey, you've got to go take your medication. Cause normally that's going to be just before chow time or just after chow time.

MS. BISHOP: Okay. Let me - - based on your answer, let me see if I can clarify my question.

RONALD FINCH: Yes, ma'am.

MS. BISHOP: When you spoke with the State about wake-up call - -

RONALD FINCH: Yes ma'am.

MS. BISHOP: And that's all I'm talking about, is a wake-up call.

RONALD FINCH: Um-hum.

MS. BISHOP: In the morning I believe medication round is about 7: 00 a.m.; is that correct?

RONALD FINCH: Yes, ma'am.

MS. BISHOP: All right. Is there a wake-up call prior to medication round? For example, a wake-up call at 5:00, a wake-up call at 6:00? When does the wake-up call for all participants in YMAC, Unit B, occur?

RONALD FINCH: What I can understand - - because I'm not there at the time - - that's going to be - -

MS. BISHOP: Let me - - let me ask you to stop there.

RONALD FINCH: Yes, ma'am

MS. BISHOP: You have just told me that you don't have personal knowledge about that.

RONALD FINCH: Yes, ma'am.

MS. BISHOP: But, in fact - - and I asked you and maybe I needed to clarify, if you had personal knowledge about the disciplinary reports, violation reports that you prepared and I believe you indicated you did.

RONALD FINCH: Yes, ma'am.

MS. BISHOP: One of your complaints about Mr. Green's behavior is that he doesn't wake up for wake-up call. So you have no - - I'm sorry.

9

Your knowledge about Mr. Green and waking up in the morning is very limited; isn't that correct?

RONALD FINCH:    That is correct

MS. BISHOP:    Let me also then address the issue since you mentioned medication.

RONALD FINCH:    Yes, ma'am.

MS. BISHOP:    Do you have any training in terms of mental illness?

RONALD FINCH:    No, ma'am, very limited.

MS. BISHOP:    Do you have any independent - - not formal training, but any type of independent knowledge about the effects of some psychotropic medications, some mental illness medications?

RONALD FINCH:    A little bit.

MS. BISHOP:    Would it be fair to say then that specific to Mr. Green or to anyone at YMAC who's on medication, you might not understand and be knowledgeable enough to speak to the effects of medication and how the body responds in terms of drowsiness, slow-down reaction. Is that fair to say?

RONALD FINCH:    Yes, ma'am" (CR. I – 17 -20)...

During cross examination of Mr. Carbajal, Ms. Bishop questioned him concerning the reason appellant might have put chairs in the shower. The query was in part as follows:

"MS. BISHOP: Are you aware that there are a number of individuals at YMAC who have privacy issues in the showering area? That's fair to say, isn't it?

DANTE CARBAJAL: Yes. But when they sign on for - - for YMAC, they - - they sign that they agree to the policies and procedures. And the policies and procedures state that as a rule that they cannot have chairs in the showers. They're not being violated of their privacy, but they - - I mean, they have a mirror on top of the shower areas. They technically don't have privacy. So, it's not something that - - it's not a choice there.

MS. BISHOP: Exactly. And are you aware that that's the reasoning of some, in fact, to place that chair outside of that stall to give some semblance of - -

DANTE CARBAJAL: Privacy.

MS. BISHOP: privacy? Are you aware of that?

DANTE CARBAJAL: Yes, ma'am. I would agree with that." (CR I — 41)

There were no other witnesses during the hearing. At the conclusion of the hearing, the Court had the discretion concerning whether he would leave Mr. Green on deferred adjudication. After he heard the testimony of all the witnesses, the Court found the violation to be true and thereby sentenced Mr. Green. The Appellant did not show in any manner that he did not violate the rules of YMAC or that he successfully completed YMAC. There was evidence put forth to the Court to show that Appellant did not successfully complete YMAC.

The undersigned believes that an appeal of this trial court's sentencing Appellant to 30 years in prison is wholly frivolous due to the fact that it is within the range of punishment for aggravated robbery. A copy of the entire appellate record (which consists of one volume of the abatement hearing, one volume of the motion to adjudicate hearing, and one volume of the Clerk's Record), as well as a copy of the Appellant's brief and a copy of the Motion to Withdraw, has been mailed to the Appellant. *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L.ED. 2d 493 (1967) and *Stephens v. State*, 35 S.W.3d 770, 771 (Tex.App. – Houston [1st Dist.] 2000, no pet.) (motion to withdraw pursuant to *Anders* is properly directed to the appellate court, not the trial court). Such items have been addressed and mailed as follows:

Marlon Green
TDC #1957279
Garza West Unit
4304 Highway 202

Beeville, TX 78102

Should this Court grant the undersigned's Motion to Withdraw, the undersigned will of course inform the Appellant of the result of his appeal and will also inform the Appellant that he may, on his own, pursue discretionary review in the Court of Criminal Appeals. *See Ex parte Wilson,* 956 S.W.2d 25, 27 (Tex.Crim.App. 1997).

## Prayer

For the reasons stated above, the undersigned prays that she be allowed to withdraw from representing the Appellant in this case, and that the Appellant be given the opportunity to file his own brief.

Respectfully submitted,

Hattie Sewell Shannon
6750 West Loop South, Suite 825
Bellaire, Texas 77401
(832) 767-1498
(832) 767-1506 FAX
Hattieshannon52@yahoo.com
TBN 13155700

## Certificate of Service

13

I hereby certify that on 4th day of August, I electronically filed the foregoing with the Clerk of the Court using the eFilingTXCourts system which will send notification of such following to the following:

Harris County District Attorney's Office

Hattie Sewell Shannon

## Certificate Of Compliance

Pursuant to TEX. R. App. P. 9.4, I hereby certify that this brief contains 2,612 words. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare this document.

Hattie Sewell Shannon